# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ACME-HARDESTY CO.,                              )
                                                )
      Plaintiff,                                )
                                                ) Civil Action
v.                                              ) Case No.
                                                )
AKZO NOBEL NV,                                  ) FILED: JULY 25, 2008          LI
AKZO NOBEL INDUSTRIES SDN. BHD.,                ) 08CV4249
(currently known as "Pacific Oleo Industries Sdn. Bhd."), ) JUDGE   DER YEGHIAYAN
AKZO NOBEL CHEMICALS INTERNATIONAL BV,          ) MAGISTRATE   JUDGE KEYS
VAN LEER MALAYSIA SDN. BHD.,                     )
(currently known as "Greif Malaysia Sdn. Bhd."),  and )
GREIF, INC.                                     )
                                                )
      Defendants.                               )

## COMPLAINT

NOW COMES the Plaintiff, Acme-Hardesty Company (hereinafter "Acme-Hardesty"),

by and through its undersigned counsel, and complains against Defendants Akzo Nobel NV,

Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd."),

Akzo Nobel Chemicals International, BV (collectively "the foreign Akzo Nobel Defendants"),

Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.") and Greif, Inc.

(formerly known as "Greif Bros. Corp.") (collectively "the Greif Defendants") as follows:

## BACKGROUND

1.      Acme-Hardesty, with a principal place of business in Blue Bell, Pennsylvania,

was served with a complaint by Tom's of Maine (hereinafter "Tom's"), dated February 28, 2007,

*Tom's of Maine v. Acme-Hardesty Co.*, Case No. 2:07-CV-73-P-S (hereinafter "Tom's

Complaint") (attached hereto as "Exhibit A" and incorporated herein by reference).  OhmTemp

International, Inc. (hereinafter "OhmTemp") was named as a co-defendant in the action. The action was filed in the Maine Superior Court, York County.

2.     Acme-Hardesty removed Tom's Complaint to the United States District Court for the District of Maine on April 25, 2007.

3.     Subsequent to Tom's Complaint, Acme-Hardesty filed a Third-Party Complaint against various U.S. and foreign Akzo Nobel and Greif entities for contribution, indemnity and for other relief in United States District Court for the District of Maine (hereinafter "Third-Party Complaint"). While dismissing without prejudice, by Order dated July 16, 2008, the foreign Akzo Nobel Defendants and the Greif Defendants for lack of personal jurisdiction, the U.S. District Court, District of Maine retained jurisdiction over certain U.S. Akzo Nobel Defendants. Also, the District of Maine left open the opportunity of jurisdiction over the dismissed foreign Akzo Nobel Defendants and Greif Defendants in another forum. Therefore, this action arises out of Acme-Hardesty's claims for contribution, indemnity and for other relief against the Defendants named herein.

4.     In Tom's Complaint, Tom's alleges that, on or about June 30, 2004, Tom's employees began heating a drum of Akzo Nobel manufactured and packaged capric acid (solid form) (hereinafter "the Subject Product"), in a drum heater that Tom's had purchased from OhmTemp.

5.     Tom's had allegedly purchased the Subject Product, along with six other barrels of capric acid, from distributor Acme-Hardesty in December of 2003.

6.     It is further alleged by Tom's that when the capric acid started melting, it leaked out of three small holes, drilled from the inside out, in the bottom of the drum and flowed onto

the exposed heating element of the OhmTemp heater, igniting and starting a fire (hereinafter "the Subject Incident").

7.　　Tom's claims that the fire caused severe smoke and fire damage to its Kennebunk, Maine manufacturing facility and building contents, along with resulting business interruption damages.

8.　　Furthermore, Tom's asserted claims of negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for particular purpose, strict liability and breach of contract.　Tom's claims that the Subject Product was defectively designed, and the defective design caused the fire at the Tom's manufacturing facility.

9.　　Acme-Hardesty acted solely as a distributor of oleochemical products it purchased in a finished condition from Akzo Nobel.

10.　　Acme-Hardesty did not manufacture the allegedly defective drum of capric acid.

11.　　Acme-Hardesty is not an end user of capric acid.

12.　　Akzo Nobel has knowledge that Acme-Hardesty is not an end user of capric acid and has knowledge that Acme-Hardesty distributes oleochemical products throughout the United States.

13.　　The Subject Product was manufactured and packaged by Akzo Nobel at its manufacturing facility in Malaysia, namely Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.").

14.　　At the time of the Subject Incident, as well as in the months leading up to it and the months following it, Acme-Hardesty was purchasing capric acid from Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.").

3

15.    Defendant Akzo Nobel Industries Sdn. Bhd. sold and shipped the Subject Product to Acme-Hardesty in December of 2002.

16.    The Subject Product was received on behalf of Acme Hardesty at a warehouse in Bensalem, Pennsylvania in January of 2003.

17.    The Subject Product was then shipped, in its original packaging, to Tom's in December of 2003.

18.    Upon information and belief, Akzo Nobel Chemicals International, BV is a successor in interest to Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.") for all matters relevant to the case at hand, including any liability of Defendant Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.") for the Subject Incident.

19.    At the time of the Subject Incident, as well as in the months leading up to it and the months following it, Akzo Nobel's U.S. entities, namely Akzo Nobel Chemicals, Inc., Akzo Nobel Surface Chemistry, LLC and Akzo Nobel, Inc., were involved in facilitating sales of Akzo Nobel Industries Sdn. Bhd. manufactured products to customers throughout the United States, including Acme-Hardesty.

20.    At all times herein relevant, Defendant Akzo Nobel Industries Sdn. Bhd. made continuous and systematic shipments of its manufactured products into the State of Illinois.

21.    At all times herein relevant, Defendant Akzo Nobel Industries Sdn. Bhd. made continuous and systematic shipments of its manufactured products to Akzo Nobel's warehouse in Bedford Park, Illinois.

22.     At all times herein relevant, Defendant Akzo Nobel Industries Sdn. Bhd. made continuous and systematic shipments of its manufactured products to Acme-Hardesty's warehouse in Kankakee, Illinois.

23.     Upon information and belief, the subject drum used by Defendant Akzo Nobel Industries Sdn. Bhd. in packaging the subject capric acid was manufactured by a Van Leer manufacturing facility in Malaysia, namely Van Leer Malaysia Sdn. Bhd (currently known as "Greif Malaysia Sdn. Bhd.").

24.     Upon information and belief, Defendant Greif, Inc. is a successor in interest to Van Leer Malaysia Sdn. Bhd. for all matters relevant to the case at hand, including any liability of the Van Leer Defendant for the Subject Incident.

25.     Upon information and belief, Defendant Greif, Inc. and Defendant Van Leer Malaysia Sdn. Bhd. operate as a single business entity for all matters relevant to the case at hand, including any liability of the Van Leer Defendant for the Subject Incident.

## DEFENDANTS

26.     Acme-Hardesty repeats paragraphs 1 through 25 above and incorporates them herein and by reference.

27.     Upon information and belief, Defendant Akzo Nobel NV is a foreign public limited liability company ("Naamloze Vennootschap"), serving as Akzo Nobel's global corporate headquarters, with a principle place of business located in Amsterdam,    the Netherlands.

28.     At all times herein material, Defendant Akzo Nobel NV was itself, or through its global business units, engaged in the design, testing, manufacturing, packaging, marketing, distribution and/or sale of capric acid to businesses throughout the United States, including the

Subject Product that was allegedly sold to Tom's in the State of Maine and including capric acid and numerous other oleochemicals and other products sold in and/or shipped to the State of Illinois.

29.    Upon information and belief, Defendant Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.") was, at all times herein relevant, a foreign company, serving as an Akzo Nobel manufacturing facility, with a principal place of business located in Pasir Gudang, Malaysia.

30.    At all times herein material, Defendant Akzo Nobel N.V. was the majority shareholder of Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.").

31.    At all times herein material, Defendant Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.") was listed as a company "belonging to Akzo Nobel N.V." in corporate filings submitted by Akzo Nobel to the U.S. SEC.

32.    At all times herein material, Defendant Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd.") was engaged in the design, testing, manufacturing, packaging, marketing, distribution and/or sale of capric acid to businesses throughout the United States, including the Subject Product that was allegedly sold to Tom's in the State of Maine and including capric acid and numerous other oleochemicals sold in and/or shipped to the State of Illinois.

33.    Upon information and belief, Defendant Akzo Nobel Chemicals International BV is a foreign corporation with a principle place of business located in Amersfoort, the Netherlands.

34.     At all times herein material, Defendant Akzo Nobel N.V. has owned one hundred percent (100 %) of the share capital of Defendant Akzo Nobel Chemicals International BV.

35.     At all times herein material, Defendant Akzo Nobel Chemicals International BV was listed as a company "belonging to Akzo Nobel, N.V." in corporate filings submitted by Akzo Nobel to the U.S. SEC.

36.     At all times herein material, Defendant Akzo Nobel Chemicals International BV was, and continues to be, a wholly owned subsidiary of Akzo Nobel N.V.

37.     At all times herein material, Defendant Akzo Nobel Chemicals International BV was, as a corporate successor in interest, engaged in the design, testing, manufacturing, packaging, marketing, distribution and/or sale of capric acid to businesses throughout the United States, including the Subject Product that was allegedly sold to Tom's in the State of Maine and including capric acid and numerous other oleochemicals sold in and/or shipped to the State of Illinois.

38.     Upon information and belief, Defendant Akzo Nobel Chemicals International, BV contractually assumed responsibility for defense and handling of the alleged liabilities of Akzo Nobel Industries Sdn. Bhd. (currently known as "Pacific Oleo Industries Sdn. Bhd."), including responsibility for defense and handling of Akzo Nobel's alleged liability with regard to the Subject Incident.

39.     At all times herein material, Defendant Akzo Nobel, N.V. has declared, in written submissions filed with the U.S. SEC, that with respect to the contractual debts of Akzo Nobel Chemicals International BV, it accepts joint and several liability for the same.

7

40.    Upon information and belief, Defendant Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.") is a foreign company with a principle place of business in Selangor, Malaysia.

41.    At all times herein material, Defendant Greif, Inc. (formerly known as "Greif Bros. Corp.") has owned one hundred percent (100 %) of the share capital of Defendant Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.").

42.    At all times herein material, Defendant Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.") was listed as a subsidiary of Defendant Greif, Inc. in corporate filings submitted by Greif, Inc. to the U.S. SEC.

43.    At all times herein material, Defendant Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.") was, and continues to be, a wholly owned subsidiary of Greif, Inc.

44.    At all times herein material, Defendant Van Leer Malaysia Sdn. Bhd. (currently known as "Greif Malaysia Sdn. Bhd.") was engaged in the design, testing, manufacturing, packaging, marketing, distribution and/or sale of chemical product packaging materials to businesses throughout the United States, including the subject barrel that was used to package the Subject Product allegedly sold to Tom's in the State of Maine and including barrels and other product packaging materials sold in and/or shipped to the State of Illinois.

45.    Upon information and belief, Greif, Inc. is a foreign company, serving as Greif's global corporate headquarters, with a principal place of business located in Delaware, Ohio.

46.    At all times herein material, Defendant Greif, Inc. was itself, or as a corporate successor in interest, through its global business units, engaged in the design, testing, manufacturing, packaging, marketing, distribution and/or sale of chemical product packaging

materials to businesses throughout the United States, including the subject barrel that was used to package the Subject Product allegedly sold to Tom's in the State of Maine and including barrels and other product packaging materials sold in and/or shipped to the State of Illinois.

47.    Upon information and belief, in early 2001, Defendant Greif, Inc. purchased the Van Leer industrial packaging division of Huhtamaki Van Leer Oyj, which included purchase of Defendant Van Leer Malaysia Sdn. Bhd. and the contractual assumption of debt and other obligations of said purchased Defendant, including assumption of responsibility for any liability of the Greif Defendants with regard to the Subject Incident.

## JURISDICTION

48.    Acme-Hardesty repeats paragraphs 1 through 47 above and incorporates them herein and by reference.

49.    Complete diversity of citizenship exists between the parties and the amount in controversy exceeds the statutory limit of $ 75,000.00.

50.    At all times herein material, the foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel entities, have operated as a global single business entity.

51.    "Akzo Nobel" refers to itself collectively as a global Fortune 500 company, listed on the Euronext Amsterdam stock exchange.

52.    Headquartered in the Netherlands, Akzo Nobel serves customers around the world with human and animal healthcare products, coatings and chemicals.

53.    Akzo Nobel sells its products in more than 130 countries.

54.    Akzo Nobel employs approximately 62,000 people worldwide.

55.    Akzo Nobel NV operates with a system of Business Units.

56.    Akzo Nobel reports consolidated revenues and financial information for all of its business units/subsidiaries.

57.    At all times herein relevant, the foreign Akzo Nobel Defendants have marketed Akzo Nobel manufactured products, including capric acid, throughout the United States, including the State of Maine and the State of Illinois.

58.    The foreign Akzo Nobel Defendants are aware that its products are distributed in Illinois.

59.    Akzo Nobel manufactured products, including those manufactured by the foreign Akzo Nobel Defendants, are sold through an established distribution channel that includes the State of Illinois.

60.    The sale of Akzo Nobel manufactured products in Illinois is not an isolated occurrence, but arises from the efforts of the foreign Akzo Nobel Defendants to serve directly and indirectly the market for its products in the United States, including the State of Illinois.

61.    The sale of Akzo Nobel manufactured product with the State of Illinois generates gross income for the foreign Akzo Nobel Defendants.

62.    Akzo Nobel Surfactants, a business unit of Akzo Nobel, has its worldwide headquarters in Chicago, Illinois, with regional headquarters in Sweden and Singapore.

63.    Chicago, Illinois served as the locus for sale of foreign Akzo Nobel manufactured oleochemicals in the United States at the time of the Subject Incident.

64.    Sales of Akzo Nobel oleochemicals produced in Malaysia by Defendant Akzo Nobel Industries Sdn. Bhd were marketed for sales and distribution in the United States through sales offices located in Chicago, Illinois.

65.    Akzo Nobel U.S. subsidiaries have manufacturing plants for surfactants in McCook, Illinois and Morris, Illinois.

66.    Akzo Nobel Surfactants, headquartered in Chicago, Illinois owns or leases real estate in Illinois.

67.    Akzo Nobel has fifteen corporate subsidiaries registered with the Illinois Secretary of State.

68.    The sale of Akzo Nobel manufactured products in the United States arises from the purposeful efforts of the foreign Akzo Nobel Defendants, and the U.S. distributors with whom they conduct business, to serve directly and indirectly the market for Akzo Nobel manufactured products throughout the United States, including the states of Maine and Illinois.

69.    At all times herein relevant, the foreign Akzo Nobel Defendants have delivered the Akzo Nobel manufactured products, including capric acid, into the stream of commerce with the expectation that said products will be purchased by consumers through the United States, including the states of Maine and Illinois.

70.    At all times herein relevant, the Akzo Nobel Defendants have not attempted to restrict United States sales of Akzo Nobel manufactured products to certain U.S. states.

71.    At all times herein relevant, the foreign Akzo Nobel Defendants have made purposeful efforts to serve a United States nationwide market, either directly or through the United States distributors with whom they conduct business, including Plaintiff Acme-Hardesty.

72.    At all times herein relevant, the foreign Akzo Nobel Defendants have conducted business with other United States distributors, besides Plaintiff Acme-Hardesty.

73.    At all times herein relevant, the foreign Akzo Nobel Defendants have sold Akzo Nobel manufactured products to United States distributors in contemplation of Akzo Nobel

product distribution and use throughout the United States, including the states of Maine and Illinois.

74.    At all times herein relevant, the foreign Akzo Nobel Defendants have had reason to know and/or expect that Akzo Nobel manufactured products would reach the United States market, including customers in the states of Maine and Illinois.

75.    The foreign Akzo Nobel Defendants intend to serve the entire United States market with Akzo Nobel manufactured products, including the states of Maine and Illinois.

76.    Plaintiff Acme-Hardesty has, for many years, purchased Akzo Nobel manufactured products and placed said products in commerce for sale to the United States public, including the states of Maine and Illinois.

77.    At all times herein relevant, the foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, have sought to increase sale of Akzo Nobel brand name product throughout the United States, including the states of Maine and Illinois.

78.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, specifically engaged Plaintiff Acme-Hardesty for the purpose of increasing distribution of Akzo Nobel branded products throughout the United States, including New England and Illinois, and in so doing, transferred capric acid, manufactured by Defendant Akzo Nobel Industries Sdn. Bhd. and warehoused in Akzo Nobel's U.S. warehouse facility in Bedford Park, Illinois, to Plaintiff Acme-Hardesty, including intrastate transfers to Acme-Hardesty at Plaintiff's Kankakee, Illinois warehouse.

79.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, conduct extensive business in the United States, including the conduct of business in the states of Maine and Illinois.

80.    Akzo Nobel owns real and personal property in the United States and owned or leased property in the states of Maine and Illinois.

81.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, advertise throughout the United States, including the states of Maine and Illinois.

82.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, employ marketing representatives to directly target Maine and Illinois customers.

83.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, have established channels for providing information and advice about Akzo Nobel manufactured products to United States purchasers of its products, including customers in the states of Maine and Illinois.

84.    At all times herein relevant, the U.S. Akzo Nobel Illinois offices have acted as the foreign Akzo Nobel Defendants' agent in the sense of conducting the foreign Akzo Nobel Defendants' business by marketing and channeling the sale of capric acid  manufactured by the foreign Akzo Nobel Defendants, a product not manufactured by Akzo Nobel in the United States.

85.    Upon information and belief, the Greif Defendants have regularly engaged in the marketing and sale of product packaging, including the steel drum used by Defendant Akzo Nobel Industries Sdn. Bhd. to package the Subject Product, intended for the U.S. market, including customers such as Tom's in the states of Maine and Illinois.

86.    Illinois' long-arm statute, 735 ILCS 5/2-209, authorizes the Court's jurisdiction of the subject action.

87.    Venue is appropriate in the United States District Court, Northern District of Illinois, Eastern Division, given all of the allegations above.

## Count One – Negligence of Akzo Nobel Entities

88.    Acme-Hardesty repeats paragraphs 1 through 87 above and incorporates them herein and by reference.

89.    In Tom's Complaint, Tom's alleges that Akzo Nobel negligently manufactured and packaged the capric acid used by Tom's.

90.    Tom's further alleges that Acme-Hardesty owed Tom's a duty to provide a product free from defects and that as a result of Acme-Hardesty's negligence, it suffered damages.

91.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the negligence and/or other fault of the foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, and their respective agents or employees acting within the course and scope of their employment.

92.    The foreign Akzo Nobel Defendants, in concert with the U.S. Akzo Nobel sales and marketing entities, were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the capric acid and  its packaging at issue in this case.

93.    Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be

adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

**Count Two – Negligence of Greif Entities**

94.    Acme-Hardesty repeats paragraphs 1 through 93 above and incorporates them herein and by reference.

95.    In Tom's Complaint, Tom's alleges that Acme-Hardesty owed Tom's a duty to provide a product free from defects and that as a result of Acme-Hardesty's negligence, it suffered damages.

96.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the negligence and/or other fault of the  Greif Defendants, or their respective agents or employees acting within the course and scope of their employment.

97.    The Greif Defendants were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of chemical product packaging to the foreign Akzo Nobel Defendants, including the subject barrel that was used by Defendant Akzo Nobel Industries Sdn. Bhd. to store the capric acid sold to Tom's.

98.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants for any sums that the Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the Greif Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of the Tom's, plus costs, fees, and other relief which the Court deems appropriate.

## Count Three – Breach of Implied Warranty of Merchantability
### by Akzo Nobel Entities

99.     Acme-Hardesty repeats and realleges paragraphs 1 through 98 above and incorporates them herein by reference.

100.    In Tom's Complaint, Tom's alleges that the capric acid sold to Tom's was not fit for the ordinary purpose for which such goods were used, and it was not adequately contained and packaged.

101.    Tom's further alleges that Acme-Hardesty breached the implied warranty of merchantability.

102.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of the implied warranty of merchantability by the foreign Akzo Nobel Defendants, or their respective agents or employees acting within the course and scope of their employment.

103.    The foreign Akzo Nobel Defendants are the merchants of the capric acid sold to Tom's and said Defendants, in concert with the U.S. Akzo Nobel entities, were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the capric acid and its packaging at issue in this case.

104.    Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's for the alleged breach of the implied warranty of merchantability and inadequate packaging.

105.    Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants pursuant to Uniform Commercial Code, and/or whatever version may be

found applicable, for whatever sums that Acme-Hardesty is adjudged liable to pay to Tom's for the alleged breach of the implied warranty of merchantability and inadequate packaging.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Four - Breach of Implied Warranty of Merchantability by Greif Entities

106.    Acme-Hardesty repeats and realleges paragraphs 1 through 105 above and incorporates them herein by reference.

107.    In Tom's Complaint, Tom's alleges that the capric acid sold to Tom's was not fit for the ordinary purpose for which such goods were used, and it was not adequately contained and packaged.

108.    Tom's further alleges that Acme-Hardesty breached the implied warranty of merchantability.

109.    Acme-Hardesty denies any liability related to Tom's Complaint. However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of the implied warranty of merchantability by the Greif Defendants, or their respective agents or employees acting within the course and scope of their employment.

110.    The Greif Defendants are the merchants of the subject barrel that was used by Defendant Akzo Nobel Industries Sdn. Bhd. to store the capric acid sold to Tom's and said Defendants were responsible for the design, testing, manufacturing, packaging, marketing,

safety, distribution, provision of warnings and/or sale of the capric acid barrel at issue in this case.

111.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants for any sums that the Acme-Hardesty is adjudged liable to pay Tom's for the alleged breach of the implied warranty of merchantability and inadequate packaging.

112.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants pursuant to the Uniform Commercial Code, and/or whatever version may be found applicable, for whatever sums that Acme-Hardesty is adjudged liable to pay to Tom's for the alleged breach of the implied warranty of merchantability and inadequate packaging.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the Greif Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Five - Breach of Implied Warranty of Fitness for a Particular Purpose by Akzo Nobel Entities

113.    Acme-Hardesty repeats and realleges paragraphs 1 through 112 above and incorporates them herein by reference.

114.    In Tom's Complaint, Tom's alleges that Acme-Hardesty knew the capric acid sold to Tom's would be heated and breached the implied warranty of fitness for a particular purpose.

115.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of the implied warranty of fitness for a

particular purpose by the foreign Akzo Nobel Defendants, or their respective agents or employees acting within the course and scope of their employment.

116.   The foreign Akzo Nobel Defendants, acting in concert with the U.S. Akzo Nobel entities, knew, or should have known, that it is the standard industry practice of customers, such as Tom's, who use capric acid in the manufacturing process of other products to heat the capric acid, melt it and then mix it with other chemicals.

117.   The foreign Akzo Nobel Defendants were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the capric acid and its packaging at issue in this case.

118.   Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that the Acme-Hardesty is adjudged liable to pay Tom's for the alleged breach of the implied warranty of fitness for a particular purpose.

119.   Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants pursuant to the Uniform Commercial Code, and/or whatever version may be found applicable, for whatever sums that Acme-Hardesty is adjudged liable to pay to Tom's for the alleged breach of the implied warranty of fitness for a particular purpose.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Six - Breach of Implied Warranty of Fitness for a Particular Purpose by Greif Entities

120.   Acme-Hardesty repeats and realleges paragraphs 1 through 119 above and incorporates them herein by reference.

19

121.    In Tom's Complaint, Tom's alleges that Acme-Hardesty knew the capric acid sold to Tom's would be heated and breached the implied warranty of fitness for a particular purpose.

122.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of the implied warranty of fitness for a particular purpose by the Greif Defendants, or their respective agents or employees acting within the course and scope of their employment.

123.    The Greif Defendants knew, or should have known, that its packaging material would be used to store capric acid, a substance which liquefies when heated.

124.    The Greif Defendants were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the capric acid barrel at issue in this case.

125.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's for the alleged breach of the implied warranty of fitness for a particular purpose.

126.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants pursuant to the Uniform Commercial Code, and/or whatever version may be found applicable, for whatever sums that Acme-Hardesty is adjudged liable to pay to Tom's for the alleged breach of the implied warranty of fitness for a particular purpose.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the Greif Defendants for contribution and indemnification for any and all sums which may be adjudged as

against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Seven - Strict Liability against the Akzo Nobel Entities

127.    Acme-Hardesty repeats and realleges paragraphs 1 through 126 above and incorporates them herein by reference.

128.    In Tom's Complaint, Tom's alleges that the capric acid sold by Acme-Hardesty was in a defective condition, unreasonably dangerous to the user of the product, and that the drum in which it was shipped arrived at Tom's without significant change from the condition in which it had been sold.

129.    Tom's further alleges that as a result of a claimed defective product, it suffered property damage, consequential damages, and economic loss.

130.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the defective condition of the barrel of capric acid sold to Acme-Hardesty by Defendant Akzo Nobel Industries Sdn. Bhd..

131.    The capric acid drum arrived at Tom's without significant change from the condition in which it was sold by Akzo Nobel Industries Sdn. Bhd. to Acme-Hardesty.

132.    The foreign Akzo Nobel Defendants, acting in concert with the U.S. Akzo Nobel entities, were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the barrel of capric acid and its packaging at issue in this case.

133.    Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Eight - Strict Liability against the Greif Entities

134.    Acme-Hardesty repeats and realleges paragraphs 1 through 133 above and incorporates them herein by reference.

135.    In Tom's Complaint, Tom's alleges that the capric acid sold by Acme-Hardesty was in a defective condition, unreasonably dangerous to the user of the product, and that the drum in which it was shipped arrived at Tom's without significant change from the condition in which it had been sold.

136.    Tom's further alleges that as a result of a claimed defective product, it suffered property damage, consequential damages, and economic loss.

137.    Acme-Hardesty denies any liability related to Tom's Complaint. However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the defective condition of the barrel of capric acid sold to Acme-Hardesty by Defendant Akzo Nobel Industries Sdn. Bhd.

138.    The capric acid drum arrived at Tom's without significant change from the condition in which it was sold by Defendant Akzo Nobel Industries Sdn. Bhd. to Acme-Hardesty.

139.    The Greif Defendants were responsible for the design, testing, manufacturing, packaging, marketing, safety, distribution, provision of warnings and/or sale of the capric acid barrel at issue in this case.

140.    Acme-Hardesty is entitled to contribution and indemnification against the Greif Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the Greif Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Nine – Breach of Contract against the Akzo Nobel Entities

141.    Acme-Hardesty repeats and realleges paragraphs 1 through 140 above and incorporates them herein by reference.

142.    In Tom's Complaint, Tom's alleges that the drum of capric acid sold by Acme-Hardesty on December 8, 2003, and used by Tom's on June 30, 2004, was defective and incomplete.

143.    Acme-Hardesty denies any liability related to Tom's Complaint.  However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of contract by the foreign Akzo Nobel Defendants.

144.    In September of 2002, Acme-Hardesty ordered 78 drums of capric acid from Defendant Akzo Nobel Industries Sdn. Bhd.

145.    The Acme-Hardesty purchase order (number 17970) for the lot of capric acid, which includes the Subject Barrel , states in pertinent part, "Capric Acid 99% FGK [Food Grade Kosher], Must Meet Specifications." (This purchase order is attached hereto as "Exhibit B" and incorporated herein by reference).

146.   In its product catalogue and other written materials, the foreign Akzo Nobel Defendants pledge that its products, including capric acid, meet ISO and Responsible Care quality standards.

147.   Any defect in the subject drum of capric acid used by Tom's on June 30, 2004, shipped by Defendant Akzo Nobel Industries Sdn. Bhd. to Acme-Hardesty in December of 2002 as part of Lot 17970A, Batch No. 210272219, is the result of the foreign Akzo Nobel Defendants' breach of contract concerning the quality of its product and packaging.

148.   Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of the Tom's, plus costs, fees, and other relief which the Court deems appropriate.

**Count Ten – Breach of express warranty against the Akzo Nobel Entities**

149.   Acme-Hardesty repeats paragraphs 1 through 148 above and incorporates them herein and by reference.

150.   In Tom's Complaint, Tom's alleges that the drum of capric acid sold by Acme-Hardesty on December 8, 2003, and used by Tom's on June 30, 2004, was defective and incomplete.

151.   Acme-Hardesty denies any liability related to Tom's Complaint.   However, if Acme-Hardesty is found liable to Tom's or to any cross-claimants related to Tom's Complaint, it shall be as a direct and proximate result of the breach of express warranty by the foreign Akzo Nobel Defendants.

152.    In September of 2002, Acme-Hardesty ordered 78 drums of capric acid from Defendant Akzo Nobel Industries Sdn. Bhd.

153.    The Acme-Hardesty purchase order (number 17970) for the lot of capric acid, which includes the Subject Barrel, states in pertinent part, "Capric Acid 99% FGK [Food Grade Kosher], Must Meet Specifications." (Exhibit B).

154.    In its product catalogue and other written materials, the foreign Akzo Nobel Defendants pledge that its products, including capric acid, meet ISO and Responsible Care quality standards.

155.    The capric acid, manufactured, packaged and sold by Defendant Akzo Nobel Industries Sdn. Bhd., did not meet the express warranties of the foreign Akzo Nobel Defendants.

156.    Any defect in the subject drum of capric acid used by Tom's on June 30, 2004, shipped by Defendant Akzo Nobel Industries Sdn. Bhd. to Acme-Hardesty in December of 2002 as part of Lot 17970A, Batch No. 210272219, is the result of the foreign Akzo Nobel Defendants' breach of express warranty concerning the quality of its product and packaging.

157.    Acme-Hardesty is entitled to contribution and indemnification against the foreign Akzo Nobel Defendants for any sums that Acme-Hardesty is adjudged liable to pay Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of the Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Eleven – Failure of Akzo Nobel Entities to Undertake Acme-Hardesty's Defense and to Indemnify Under UCC's Vouching-In Doctrine

158.    Acme-Hardesty repeats paragraphs 1 through 157 above and incorporates them herein and by reference.

25

159.    Immediately or soon after the Subject Incident, Tom's notified Akzo Nobel and Acme-Hardesty about the Subject Incident involving the Subject Product at Tom's manufacturing facility.

160.    As early as March 2005, Acme-Hardesty, as the buyer of the Subject Product, provided written notice of Tom's potential claim against Acme-Hardesty to Akzo Nobel Defendants, the seller of the Subject Product, and Akzo Nobel's general liability insurance carrier Zurich Insurance Company seeking defense and indemnification.   (Correspondences related to Acme-Hardesty's tender are attached hereto as "Group Exhibit C" and incorporated herein by reference.  See March 18, 2005 notice letter.)

161.    Akzo Nobel Defendants, through Zurich Insurance Company, acknowledged Acme-Hardesty's tender in April 2005.  (See Group Exhibit C, April 28, 2005 acknowledgment letter).

162.    In February and March 2006, Acme-Hardesty again requested Akzo Nobel defend and indemnify Acme-Hardesty.  In March 2006, Acme-Hardesty notified Akzo Nobel that Akzo Nobel and its insurance carrier may be bound by a verdict and judgment of liability against Acme-Hardesty if they do not assume defense and obligation to indemnify Acme-Hardesty.  (See Group Exhibit C, February 6, 2006 letter and March 14, 2006 letter).

163.    Even after Acme-Hardesty sent another notice for defense and indemnification in July 2006, Akzo Nobel did not, and still has not, defended Acme-Hardesty related to the Subject Incident involving Akzo Nobel's Subject Product.

164.    Having failed to defend Acme-Hardesty after seasonable receipt of notice, Acme-Hardesty is entitled to contribution and indemnification against the Akzo Nobel Defendants

pursuant to the Uniform Commercial Code, Vouching-In Doctrine, and/or whatever version may be found applicable, for whatever sums that Acme-Hardesty is adjudged liable to pay to Tom's.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of the Tom's, plus costs, fees, and other relief which the Court deems appropriate.

### Count Twelve – Breach of Implied Indemnity against Akzo Nobel Entities

165.    Acme-Hardesty repeats paragraphs 1 through 164 above and incorporates them herein and by reference.

166.    Prior to the Subject Incident at Tom's manufacturing facility in 2004, Acme-Hardesty and Akzo Nobel had a pre-existing relationship wherein Acme-Hardesty bought and distributed Akzo Nobel products.

167.    At the time of the Subject Incident, as well as in the years leading up to it and the months following it, Acme-Hardesty purchased capric acid from Akzo Nobel Industries Sdn. Bhd.

168.    Defendant Akzo Nobel Industries Sdn. Bhd. sold and shipped the Subject Product to Acme-Hardesty in December of 2002. The Subject Product was received on behalf of Acme Hardesty at a warehouse in Bensalem, Pennsylvania in January of 2003. The Subject Product was then shipped, in its original packaging, to Tom's in December of 2003.

169.    As sellers of the Subject Product, Akzo Nobel has an implied duty to indemnify Acme-Hardesty for damages related to the Tom's Complaint, given Acme-Hardesty's pre-tort distributor relationship with Akzo Nobel

167.    Akzo Nobel has failed to agree to indemnify Acme-Hardesty for the damages and defense costs relating to Tom's Complaint involving Akzo Nobel's Subject Product, despite Acme-Hardesty's request that Akzo Nobel indemnify it.

WHEREFORE, the Plaintiff, Acme-Hardesty, demands judgment against the foreign Akzo Nobel Defendants for contribution and indemnification for any and all sums which may be adjudged as against Acme-Hardesty in favor of the Tom's, plus costs, fees, and other relief which the Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 25th day of July, 2008.

By:    /s/Jennifer J. Johnson
                One of the Attorneys for
                Plaintiff, Acme-Hardesty Company

Jennifer J. Johnson
Si-Yong Yi
Counsel for Plaintiff, Acme-Hardesty Company
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008 a true and correct copy of Plaintiff Acme-Hardesty Company's Complaint was submitted to the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division using the Court's Electronic Filing System.


Dated this 25th day of July, 2008.


By:   /s/Jennifer J. Johnson
   One of the Attorneys for
   Plaintiff, Acme-Hardesty Company


Jennifer J. Johnson
Si-Yong Yi
Counsel for Plaintiff, Acme-Hardesty Company
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6308
(312) 627-4000


436946

LI
08CV4249
JUDGE   DER YEGHIAYAN
MAGISTRATE  JUDGE  KEYS

# EXHIBIT  A

STATE OF MAINE                                  SUPERIOR COURT
YORK, SS.                                       CIVIL ACTION
                                                DOCKET NO. CV-06-


TOM'S OF MAINE, INC.,               )
                                    )
          Plaintiff,                )
                                    )
v.                                  )
                                    )           **COMPLAINT**
ACME-HARDESTY CO. And               )
OHMTEMP INTERNATIONAL, INC.,        )
                                    )
          Defendants.               )
                                    )


          Plaintiff Tom's of Maine, Inc. alleges as follows:

## PARTIES

1.    The Plaintiff, Tom's of Maine, Inc. (hereinafter "Tom's"), is a Maine corporation,
      with a principal place of business at 27 Community Drive, Sanford, Maine.  Tom's
      is a nationally known manufacturer of health and beauty products made from high-
      quality all-natural ingredients.

2.    Defendant Acme-Hardesty Co. ("Acme-Hardesty") is a Pennsylvania company, a
      division of Jacob Stern & Sons, Inc.  Acme-Hardesty has a usual place of business
      at 1787 Sentry Parkway West, Suite 18-460, Blue Bell, Pennsylvania 19422.
      Defendant Acme-Hardesty is a major marketer and distributor of vegetable oil and
      animal fat-based oleochemicals.  It distributes these products throughout the
      United States, including the State of Maine.

3.    Defendant Ohmtemp International, Inc. ("Ohmtemp") is a Michigan corporation
      with a usual place of business at 32595 Industrial Road, Garden City, Michigan
      48135.  Ohmtemp is the manufacturer and designer of electric container heaters
      (including drum heaters) for industrial, manufacturing and commercial
      applications.

## FACTS COMMON TO ALL COUNTS

4.  At all times material, Tom's was the owner of the real estate, building and contents located at One Trackside Drive, Kennebunk, Maine (hereinafter "the premises").

5.  At the premises, Tom's manufactured a variety of natural products, including toothpaste, shampoos, cough and cold care products, and soap.

6.  Tom's used capric acid in the manufacture of its all-natural liquid soap.

7.  At all times material, Acme-Hardesty sold the capric acid to Tom's.

8.  All of the capric acid that Acme-Hardesty sold to Tom's was manufactured and packaged by Akzo Nobel.

9.  Akzo Nobel pours liquid capric acid into 55-gallon drums. The capric acid hardens, and the product is sold and shipped in a solid form.

10. In December 2003, Acme-Hardesty sold Tom's seven drums of Akzo Nobel capric acid.

11. In order to use the solid capric acid in its manufacturing process, Tom's had to heat it, melt it, and then mix it with other materials.

12. In September 2003, Tom's purchased two drum heaters from Ohmtemp, for use in melting capric acid and other solid products.

13. On June 30, 2004, Tom's employees began heating a drum of Akzo Nobel capric acid in the Ohmtemp heater.

14. As the capric acid slowly melted, it leaked out of three small holes drilled in the bottom of the drum of capric acid from the inside out. The melted capric acid flowed onto the exposed heating element of the Ohmtemp heater and ignited, starting a fire.

15. As a result of the fire, Tom's factory and contents suffered severe smoke and fire damage, and Tom's sustained business interruption damages.

## COUNT ONE
### (Negligence against Acme-Hardesty)

16.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

17.    Akzo Nobel negligently manufactured and packaged the capric acid used by Tom's.

18.    Defendant Acme-Hardesty was negligent in failing to inspect the drum of capric acid that it purchased from Akzo Nobel and re-sold to Tom's.

19.    Acme-Hardesty owed a duty to Tom's to provide a product free from defects.

20.    As a result of the negligence of defendant Acme-Hardesty, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Acme-Hardesty for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT TWO
### (Negligence against Ohmtemp)

21.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

22.    Defendant Ohmtemp negligently designed the drum heater.

23.    Defendant Ohmtemp negligently sold the drum heater to Tom's without appropriate warnings concerning the use of the drum heater.

24.    As a result of the negligence of defendant Ohmtemp, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Ohmtemp for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

- 3 -

## COUNT THREE
### (Breach of implied warranty of
### merchantability by Acme-Hardesty)

25. Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

26. Acme-Hardesty is the merchant of the capric acid sold to Tom's.

27. The capric acid sold to Tom's was not fit for the ordinary purpose for which such goods were used, and it was not adequately contained and packaged.

28. Acme-Hardesty breached the implied warranty of merchantability.

29. As a result of the breach of the implied warranty of merchantability by defendant Acme-Hardesty, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Acme-Hardesty for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT FOUR
### (Breach of implied warranty of fitness for
### particular purpose by Acme-Hardesty)

30. Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

31. Acme-Hardesty knew the capric acid sold to Tom's would be heated.

32. Acme-Hardesty breached the implied warranty of fitness for a particular purpose.

33. As a result of this breach of the implied warranty of fitness for a particular purpose, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Acme-Hardesty for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT FIVE
### (Breach of express warranty and implied warranty
### of merchantability by Ohmtemp)

34.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

35.    In advertising the Ohmtemp drum heater that it sold to Tom's, Ohmtemp's President, Jack Skiver stated: "With Ohmtemp's 5 Gallon Pail Heaters and 55 Gallon Drum Heaters, many problems associated with leaky pails and direct contact are virtually eliminated."

36.    Ohmtemp was a merchant of the drum heater, and both expressly and impliedly warranted that the drum heater was fit for the ordinary purpose for which the heater was to be used – the heating of substances such as capric acid.

37.    Ohmtemp's drum heater did not meet its express and implied warranties.

38.    As a result of Ohmtemp's breaches of warranty, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Ohmtemp for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT SIX
### (Breach of implied warranty of fitness for
### particular purpose by Ohmtemp)

39.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

40.    Ohmtemp knew that the drum heater would be used for a particular purpose: the heating of substances such as capric acid.

41.    Ohmtemp breached the implied warranty of fitness for a particular purpose by failing to provide Tom's with a drum heater that was safe for the heating of substances such as capric acid.

42.    As a result of this breach of warranty by Ohmtemp, Tom's suffered property damage, consequential damages and economic loss.

- 5 -

WHEREFORE, Plaintiff Tom's demands judgment against defendant Ohmtemp for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT SEVEN
### (Strict Liability under 14 M.R.S.A. § 221 against Acme-Hardesty)

43.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

44.    The capric acid sold by Acme-Hardesty to Tom's was sold in a defective condition, unreasonably dangerous to the user of the product.

45.    The capric acid drum arrived at Tom's without significant change from the condition in which it was sold by Acme-Hardesty.

46.    As a result of this defective product, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Acme-Hardesty for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT EIGHT
### (Strict Liability under 14 M.R.S.A. § 221 against Ohmtemp)

47.    Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

48.    The Ohmtemp drum heater was defectively designed, and was unreasonably dangerous to the user of the product.

49.    As a result of the defectively designed drum heater, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Ohmtemp for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT NINE
### (Breach of Contract against Acme-Hardesty)

50. Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

51. Tom's ordered a full drum of capric acid from Acme-Hardesty.

52. The Tom's of Maine purchase order (number 028683) for the capric acid used on June 30, 2004 states in part: "Seller warrants goods in this order are free from defects in workmanship, materials, & design .... Seller indemnifies buyer against costs, loss & liability for recalls, personal injury or property damage to the buyer or its customers ... caused by goods in this order, and carries insurance to cover those costs."

53. The drum of capric acid sold by Acme-Hardesty on December 8, 2003, and used by Tom's on June 30, 2004 was defective and incomplete.

54. Demand was made upon Acme-Hardesty for Tom's damages, and Acme-Hardesty and its insurer have declined to meet their obligation.

55. As a result of Acme-Hardesty's breach of contract, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Acme-Hardesty for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT TEN
### (Breach of Contract against Ohmtemp)

56. Plaintiff repeats and realleges paragraphs 1 through 15 above and incorporates them herein by reference.

57. Tom's bought a drum heater from Ohmtemp based on Ohmtemp's promises that the heater would be safe, and would eliminate problems with leaky pails and direct contact.

58. The drum heater sold by Ohmtemp was not safe, and did not eliminate problems with leaky pails and direct contact.

59. As a result of Ohmtemp's breach of contract, Tom's suffered property damage, consequential damages and economic loss.

WHEREFORE, Plaintiff Tom's demands judgment against defendant Ohmtemp for its damages, plus interest, costs, and such further relief as this Court deems just and proper.

DATED at Portland, Maine this **28** day of February, 2007.

NORMAN, HANSON & DeTROY, LLC

David P. Very    Bar No. 6806
Attorney for Plaintiff

Norman, Hanson & DeTroy, LLC
415 Congress Street
P.O. Box 4600
Portland, Maine  04112-4600
(207) 774-7000

- 8 -

```
LI
08CV4249
JUDGE    DER YEGHIAYAN
MAGISTRATE   JUDGE   KEYS
```

# EXHIBIT  B



EXHIBIT

G



**ACME-HARDESTY CO.**

A Division of Jacob Stern & Sons, Inc.                    Your Partner in Global Sourcing

## PURCHASE ORDER

| P.O. NUMBER | DATE ORDERED |
|---|---|
| 17970 | 09/10/2002 |

| VENDOR | SHIP TO |
|---|---|
| AKZO NOBEL INDUSTRIAL SDN BHD<br>PO BOX 143, PASIR GUDANG 81707<br>JOHOR DARUL TAKZIM<br>MALAYSIA | G&A WAREHOUSES INC.<br>ATTN: MANUEL AVINO<br>2919 SAMUEL DRIVE<br>BENSALEM, PA 19020 |

VENDOR NO. 635

| NEEDED BY | SHIP VIA | | FREIGHT TERMS | | |
|---|---|---|---|---|---|
| 2/10/2002 | OOCL | | FREIGHT COLLECT | | PASIR GUDANG |

| ORDERED BY | VENDOR # | PAYMENT TERMS | | TELEPHONE/FAX |
|---|---|---|---|---|
| SCARLETT M. | 635 | CASH VS DOCUME | UPON REQUEST | 07-25180000 / 07-2511066 |

| QUANTITY | PART # | DESCRIPTION/VENDOR PART# | PRICE | PER | EXTENSION |
|---|---|---|---|---|---|
| | | C OF A REQUIRED | | | |
| | | 5 PREDOMINANT SUBSTANCE LABELS REQUIRED | | | |
| | | CONFIRMATION OF FAXED ORDER | | | |
| | | MUST MEET SPECIFICATIONS | | | |
| 78 DRUMS | 778 | CAPRIC ACID 99% FGK | 0.6124 | LB | 18,955.36 |
| ),952.584 LBS | | 396.828# DRUM | | | |
| | | "STENCIL | | | |
| | | CAPRIC ACID 99% FGK | | | |
| | | AKZO NOBEL INDUSTRIES | | | |
| | | LOT# 17970-A | | | |
| | | 180 KG NET | | | |
| | | PRODUCT OF MALAYSIA | | | |
| | | ================================== | | | |

*90602-A) Rec 78drums, 6+A, #6226, 1/24/03*

| APPROVED BY | CONFIRMED BY | PO TOTAL |
|---|---|---|
| | | 18,955.36 |

**RECEIVING**

1787 Sentry Parkway West · Suite 18-460 · Blue Bell, PA · 19422 · www.acme-hardesty.com
Toll-Free: 800/223-7054 · Phone: 215/591-3610 · Fax: 215/591-3620

```
LI
08CV4249
JUDGE   DER YEGHIAYAN
MAGISTRATE  JUDGE  KEYS
```

# GROUP
# EXHIBIT  C



# CHUBB GROUP OF INSURANCE COMPANIES

One Financial Center, Boston, Massachusetts 02111-2697 • Phone: (617) 439-4440
Telex: 271419; FAX: (617) 439-0351

March 18, 2005

Daniel Maher
Zurich North America
P.O. Box 66941
Chicago, IL 60666

Re:  **Zurich Claim #:**     **9100061890**
**Zurich Insured:**    **Azko Nobel**
**Chubb Claim #:**     **3535-2513**
**Chubb Insured:**     **Jacob Stern & Sons and Acme Hardesty Company**
**Claimant:**          **St. Paul Travelers A/S/O Toms of Maine**
**D/L:**               **7/1/04**

Dear Mr. Maher:

Chubb Insurance Company provides the general liability policy to our insured as captioned above. After investigating this matter, we understand that our insured may meet the definition of a vendor in the "who is an insured section" of the general liability policy issued to Azko Noble by Zurhch Insurance Company. As such, we request that you assume handling the defense and indemnification of our insured in this particular matter under the provisions of your general liability policy.

In the alternative, please forward a complete certified copy of the subject general liability policy for review.

Thank you for attention to this matter.

Very truly yours,
Chubb & Son,
A division of Federal Insurance Company

Mark McLoughlin, AIC
Litigation Examiner

MM/ss
Enclosure

RCVD 06 09:1E



**ZURICH**

April 28, 2005


Chubb Group
One Financial Center
Boston, MA 02111-2697
Mr. Mark McLoughlin


RE:    Claim #:       9100061890-001
       Insured:       Akzo Nobel Malaysia
       Date of Loss:  07/01/04
       Claimant:      Tom's of Maine
       Your File:     3535-2513
       Your Insured:  Jacob Stern & Sons and Acme Hardesty Company

North America

Claims

P.O. Box 66941
Chicago, IL
60666-0941

(800) 695-6575
(847) 240-8172
www.zurichna.com

Dear Mr. McLoughlin:

This acknowledges your tender and your request for the Akzo Nobel
policy.

Please be advised that we are handling this claim on a courtesy basis for
our colleagues overseas. All of the issues regarding coverage will be
directed to them for an appropriate response and we will be consulting
with them regarding your tender. Also, the policy is in Dutch and
presumably a copy of the policy would be of little use to you.

Finally, please provide complete copies of all contracts so the tender can
be evaluated.

Thank you for your time and consideration.


Very truly yours,
Zurich American Insurance Company

Dan Maher
(847) 605-3336

# THOMPSON & BOWIE, LLP
### ATTORNEYS AT LAW
### THREE CANAL PLAZA
## PORTLAND, ME 04112

ROY E. THOMPSON, JR.
JAMES M. BOWIE
DANIEL R. MAWHINNEY
REBECCA H. FARNUM
FRANK W. DELONG III
MICHAEL E. SAUCIER
MARK V. FRANCO
EDWARD R. BENJAMIN, JR.
CATHY S. ROBERTS
PAUL C. CATSOS
ROBERT C. HATCH
ELIZABETH KNOX PECK
LISA FITZGIBBON BENDETSON
JAMES A. BILLINGS
DALE L. GAVIN
HOLLI J. SAWYER-SINCLAIR
APRIL C. JOYCE

MAILING ADDRESS
P. O. BOX 4630

TELEPHONE (207) 774-2500
FAX (207) 774-3591

E-MAIL ADDRESS
law@thompsonbowie.com

WEBSITE
http://www.thompsonbowie.com

February 6, 2006

Laurence H. Leavitt, Esq.
Friedman Gaythwaite Wolf & Leavitt, LLP
Six City Center
P.O Box 4726
Portland, ME  04112-4726

Re:   *The Travelers Property Casualty Company of America/Tom's of Maine v.*
      *Akzo Nobel, Inc., Acme-Hardesty, Co. and OHMTEMP International, Inc.*

Dear Larry:

At your request, I am enclosing for you a copy of the letter from Mark McLoughlin of Chubb & Son, a division of Federal Insurance Company to Daniel Mahar of Zurich North America dated March 18, 2005 in which Zurich was requested to assume handling the defense and indemnification of Jacob Stern & Sons and Acme-Hardesty Company.  Please let this letter serve to repeat that request to Zurich and to Akzo Nobel on behalf of Chubb and its insureds. This request is based upon the claims and demands of the Travelers Property Casualty Company of America as subrogee of Tom's of Maine, Inc. and based upon the draft Complaint recently provided by attorneys Birocco and Stein.

Thank you very much for your attention to this matter.

Very truly yours,

/s/    Daniel R. Mawhinney

Daniel R. Mawhinney

DRM/wtf
*dmawhinney@thompsonbowie.com*

Enclosure\
\tbfs2\data\docs\162\1\9133\l-Leavitt 2-6-06.doc

**THOMPSON & BOWIE, LLP**
ATTORNEYS AT LAW
THREE CANAL PLAZA
**PORTLAND, ME 04112**

ROY E. THOMPSON, JR.
JAMES M. BOWIE
DANIEL R. MAWHINNEY
REBECCA H. FARNUM
FRANK W. DELONG III
MICHAEL E. SAUCIER
MARK V. FRANCO
EDWARD R. BENJAMIN, JR.
CATHY S. ROBERTS
PAUL C. CATSOS
ROBERT C. HATCH
ELIZABETH KNOX PECK
LISA FITZGIBBON BENDETSON
JAMES A. BILLINGS
DALE L. GAVIN
HOLLI J. SAWYER-SINCLAIR

MAILING ADDRESS
P. O. BOX 4630

TELEPHONE (207) 774-2500
FAX (207) 774-3591

E-MAIL ADDRESS
law@thompsonbowie.com

WEBSITE
http://www.thompsonbowie.com

March 14, 2006

VIA FACSIMILE and U.S. Mail

Laurence H. Leavitt, Esq.
Friedman Gaythwaite Wolf & Leavitt, LLP
Six City Center
P.O Box 4726
Portland, ME 04112-4726

> Re:    *The Travelers Property Casualty Company of America/Tom's of Maine v.*
> *Akzo Nobel, Inc., Acme-Hardesty, Co. and OHMTEMP International, Inc.*

Dear Larry:

This follows our telephone conversation on March 2nd.

You related that, at this juncture, Zurich has decided not to assume Acme-Hardesty's defense. I ask that you pass this letter to your client and Zurich. If you would prefer that I write to Zurich directly, please provide me with the contact information for the party responsible at Zurich for this matter.

As we have discussed, at this juncture, the claims articulated by counsel for St. Paul/Travelers against Acme-Hardesty would appear to result in a straight pass through of liability to Akzo Nobel as the product manufacturer. As this juncture, no claims have been articulated other than straight pass through claims to Akzo Nobel. While there is a possibility that St. Paul/Travelers may later articulate claims that are other than straight pass through claims to Akzo Nobel, neither I nor you at this juncture are aware of facts which would support such claims.

On behalf of Acme-Hardesty and its insurance carrier, Chubb, I repeat the demand that Akzo Nobel and Zurich assume Acme-Hardesty's defense and protect its interest. If Akzo Nobel and Zurich do not assume the defense and obligation to indemnify Acme-Hardesty, please let this letter serve as notice that Akzo Nobel and its carrier may be

Laurence H. Leavitt, Esq.
March 14, 2006
Page 2

bound by a verdict and judgment of liability against Acme-Hardesty. Further, Acme-Hardesty and Chubb reserve their rights to seek reimbursement from Akzo Nobel and Zurich to recover attorney's fees and all costs related to the St. Paul/Travelers and Tom's of Maine claims.

On behalf of Acme-Hardesty, please accept this letter as its request for the production of the Zurich insurance policy(s) and all declarations, endorsements and reservations concerning the Akzo Nobel company which sold the Capric acid products in question to Acme-Hardesty as well as regarding any parent or affiliated companies which have had offices in the United States from the date of sale to present. We would like to examine those policies to determine whether Acme-Hardesty, as Akzo Nobel's vendor or otherwise, has a direct right of coverage under the Zurich policies and a right of action to pursue Zurich for its failure to protect Acme-Hardesty's interests.

You have indicated that there has recently been a sale by Akzo Nobel Malaysia of its stock, property or other interests to a company named Lam Soon. You have indicated that Akzo Nobel Malaysia and Zurich have reached an agreement with Lam Soon to be responsible for the liabilities which may result from the claims asserted or to be asserted by St. Paul/Travelers and Tom's of Maine. Please accept this as our request to be provided with the documentation between and among Akzo Nobel, Lam Soon and Zurich which defines that arrangement.

Thank you for your attention to these matters. We look forward to a positive response from Akzo Nobel and Zurich. I respectfully request that you confirm in writing that this letter has been provided to Zurich. Otherwise, please provide me with the name and address of the person principally responsible at Zurich for this matter.

Very truly yours,

/s/    Daniel R. Mawhinney

Daniel R. Mawhinney

DRM/wtf
dmawhinney@thompsonbowie.com

cc:    Scott Langford, Senior Litigation Examiner
           (*Policy No. 000035352513 / 000003*) (*via email slangford@chubb.com*)
       Mr. Brian Huston (*via email bhuston@acme-hardesty.com*)
       Jonathan Rodriguez-Atkatz (*via email jatkatz@jacobstern.com*)

THOMPSON & BOWIE, LLP
ATTORNEYS AT LAW
THREE CANAL PLAZA
PORTLAND, ME 04112

ROY E. THOMPSON, JR.
JAMES M. BOWIE
DANIEL R. MAWHINNEY
REBECCA H. FARNUM
FRANK W. DELONG III
MICHAEL E. SAUCIER
MARK V. FRANCO
EDWARD R. BENJAMIN, JR.
CATHY S. ROBERTS
PAUL C. CATSOS
ROBERT C. HATCH
ELIZABETH KNOX PECK
LISA FITZGIBBON BENDETSON
JAMES A. BILLINGS
DALE L. GAVIN
HOLLI S. BOCCELLI

MAILING ADDRESS
P. O. BOX 4630
PORTLAND, ME 04112-4630

TELEPHONE (207) 774-2500
FAX (207) 774-3591

E-MAIL ADDRESS
law@thompsonbowie.com

WEBSITE
http://www.thompsonbowie.com

July 6, 2006

Laurence H. Leavitt, Esq.
Friedman Gaythwaite Wolf & Leavitt, LLP
Six City Center
P.O. Box 4726
Portland, ME  04112-4726

Re:   *The Travelers Property Casualty Company of America/Tom's of Maine v.*
*Akzo Nobel, Inc., Acme-Hardesty, Co. and OHMTEMP International, Inc.*

Dear Larry:

I am writing yet again to obtain a copy of the Zurich policy insuring Akzo Nobel in this matter and which may also provide coverage for its vendor, Acme-Hardesty. On March 18, 2005, Chubb Insurance on behalf of Acme Hardesty wrote to Zurich and requested defense and indemnification on behalf of Acme Hardesty. I have also written to you previously on February 6, 2006 and March 14, 2006 to request defense and indemnification on behalf of Acme Hardesty from Akzo Nobel and Zurich. There has been no definitive response from you on behalf of Akzo Nobel and Zurich and there has never been any direct response at all from Zurich.

I am requesting any and all insurance policies that provide coverage for Akzo Nobel in this matter, including any and all disclaimers, endorsements and addenda as well as the declaration pages of the policy and all correspondence and reservation of rights from Zurich regarding coverage for Akzo Nobel and/or Acme-Hardesty regarding the Tom's of Maine/St. Paul/Travelers' claims at issue.

Acme-Hardesty has a right to know whether there may be coverage afforded to it under the Akzo Nobel policy(s) for the alleged product defect. We are considering the filing of a declaratory judgment action to press and resolve this issue if Zurich continues to refuse to provide its records and respond to the request for defense and indemnification. I am also requesting that Zurich provide a written response within the

Laurence H. Leavitt, Esq.
July 6, 2006
Page 2


next 14 days setting forth the basis of it's denial of the request for defense and indemnification if that is its position.

     I am providing a copy of this letter via US Mail to the Zurich contact who is the original recipient of the request from Chubb dated March 18, 2005.  If there is a more appropriate person at Zurich to whom this letter should be addressed, I trust that you and Mr. Maher will so inform me immediately.

     I look forward to a reply(s).

           Very truly yours,

       /s/    Daniel R. Mawhinney

           Daniel R. Mawhinney

DRM/wtf
*dmawhinney@thompsonbowie.com*

cc:   Mr. Daniel Maher (*Zurich claim no. 9100061890*)
      Scott Langford, Senior Litigation Examiner (*Policy No. 00035352513 / 000003*)