# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ACME-HARDESTY CO., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 08 C 4249 |
| | ) | |
| VAN LEER MALAYSIA SDN. BHD., | ) | |
| et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Van Leer Malaysia SDN. BHD.'s ("Van Leer") and Defendant Greif, Inc.'s ("Greif") motions to dismiss. For the reasons stated below, we grant the motions to dismiss.

## BACKGROUND

Plaintiff Acme-Hardesty Co. ("Acme") alleges that, in 2004, employees of Tom's of Maine ("Tom's") heated a drum of capric acid in a drum heater that Tom's purchased from Ohm Temp International, Inc. ("Ohm"). Tom's allegedly purchased the barrels of capric acid from Acme, which is a distributor of the product. The

1

capric acid allegedly began leaking during the heating process and flowed onto the exposed heating element of the drum heater, causing a fire. The fire allegedly caused damage to Tom's Kennenbunk, Maine manufacturing facility. In February 2007, Tom's allegedly sued Acme and Ohm in Maine state court ("Maine Action"). Acme then removed the Maine Action to federal court in April 2007. Acme also filed a third-party complaint against various entities for contribution and indemnity. The district court in the Maine Action then dismissed defendants in the third party complaint including Van Leer and Greif for lack of personal jurisdiction.

Acme subsequently initiated the instant action for contribution, indemnity and other relief. Acme alleges that the capric acid at issue was manufactured and packaged by Defendant Akzo Nobel NV ("Akzo") at its manufacturing facility in Malaysia. Akzo allegedly sold and shipped the capric acid to Acme in December 2002 and the product was stored in Pennsylvania. Acme then allegedly sold the product to Tom's and shipped the product to Tom's in December 2003. Acme contends that Van Leer designed, manufactured and sold the barrel to Akzo that contained the capric acid. In regard to Greif, Acme contends that Greif owns Van Leer.

Acme includes in its complaint negligence claims (Counts I-II), breach of implied warranty of merchantability claims (Counts II-VI), breach of implied

warranty of fitness for a particular purposes claims (Counts V-VI), strict liability claims (Counts VII-VIII), breach of contract claims (Count IX), breach of express warranty claims (Count X), claims based on the vouching-in-doctrine (Count XI), and breach of implied indemnity claims (Count XII). In the instant action, on October 7, 2008, we granted Acme leave to conduct limited discovery relating to personal jurisdiction issues. Subsequently, on January 28, 2009, Acme voluntarily dismissed Defendant Akzo, Defendant Akzo Nobel Industries SDN. BHD., and Defendant Akzo Nobel Chemicals International BV, which were the Defendants associated with the sale of the capric acid to Acme. The remaining Defendants Van Leer and Greif are connected to the barrel that contained the capric acid. Van Leer and Greif each move to dismiss the claims brought against them.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must

allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). Under the current notice pleading standard in federal courts a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later")

Federal Rule of Civil Procedure 12(b)(2) directs a court to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Although a plaintiff need not anticipate in its complaint a personal jurisdiction challenge, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*,

338 F.3d 773, 781-82 (7th Cir. 2003); *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008)(stating that "[t]he plaintiff bears the burden of proving that the jurisdictional requirements are met, but if no facts are in dispute, as is the case here, then the party asserting jurisdiction need only establish a *prima facie* case of personal jurisdiction to satisfy that burden"); *Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 875 (7th Cir. 2006)(indicating that the plaintiff bears the burden of establishing personal jurisdiction). If the district court holds an evidentiary hearing to address the personal jurisdiction issue, the "plaintiff must establish jurisdiction by a preponderance of the evidence." *Purdue Research Foundation*, 338 F.3d at 781-82. If the district court rules solely based on written materials submitted by the parties, "the plaintiff 'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting in part *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In determining whether a plaintiff has made a prima facie showing, "the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). In assessing whether a plaintiff has made a *prima facie* showing the court can consider materials presented to the court by the parties such as affidavits. *Id.*

**DISCUSSION**

I.  Subject Matter Jurisdiction

We initially note that Acme has failed to meet its burden as the plaintiff to show that this court has subject matter jurisdiction in this case.  A "federal judge's first duty in every case" is to "independently . . . inquir[e] whether the court has" subject matter jurisdiction.  *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003).  Acme contends in its complaint that this court has diversity subject matter jurisdiction in this case.  (Compl. Par. 49).  A federal court has diversity subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and" the action "is between . . . citizens of different States" or between "citizens of a State and citizens or subjects of a foreign state. . . ."  28 U.S.C. § 1332(a).  For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . ."  28 U.S.C. § 1332(c)(1).  In the instant action, Acme alleges in the complaint that Defendants are all foreign corporations operating in foreign countries, although Acme indicates that Greif's principal place of business is in Delaware, Ohio.  (Compl. Par. 27-45).  Acme, however, has not provided sufficient facts concerning its citizenship and thus has failed to meet its burden as a plaintiff to show

that this court has subject matter jurisdiction. Acme indicates only that its principal place of business is in Pennsylvania. (Compl. Par. 1). Acme does not indicate its state of incorporation or even whether it is a domestic corporation. The facts indicate only that it operates as a distributor in the United States. (Compl. Par. 71). We cannot presume facts not included in the complaint regarding subject matter jurisdiction which is the threshold issue for this case proceeding in this court. Therefore, since Acme has failed to show that this court has subject matter jurisdiction, we dismiss the instant action for lack of jurisdiction. In addition, as is explained below, even if Acme could remedy the defects in its jurisdictional allegations and show that this court has subject matter jurisdiction, Van Leer and Greif have shown that the remaining claims should be dismissed.

## II. Van Leer's Motion to Dismiss

Van Leer argues that the claims brought against it should be dismissed since it is not subject to personal jurisdiction in Illinois and since it has not been properly served. We need not address the service issue since, as is explained below, Acme has not shown that Van Leer is subject to personal jurisdiction in Illinois. In a case in federal court premised solely on diversity subject matter jurisdiction, the court "has personal jurisdiction only where a court of the state in which it sits would have

such jurisdiction." *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 760 (7th Cir. 2008). To determine whether a defendant is subject to personal jurisdiction in Illinois, a court must consider the limitations imposed by "the Illinois long-arm statute, the Illinois constitution, and the federal constitution." *Id.* A defendant is subject to general jurisdiction "where the defendant's contacts with the forum state are 'continuous and systematic.'" *Id.* n. 3 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). For general jurisdiction, "[u]nlike specific jurisdiction," a defendant can "be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Foundation*, 338 F.3d at 787.

A defendant can be subject to specific jurisdiction in a state where a defendant has particular contacts with the state. *Citadel Group Ltd.*, 536 F.3d at 760 n.3. The Illinois long-arm statute provides a "catch-all" provision for personal jurisdiction "which permits a court to 'exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.'" *Id.* at 760 (quoting in part 735 Ill. Comp. Stat. 5/2-209(c)). The Illinois and federal constitutional limitations are generally synonymous. *Id.* Under the federal due process limitations, a court lacks personal jurisdiction over a defendant "unless the defendant had 'certain minimum contacts' with the forum state 'such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting in part *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A showing of minimum contacts can be made by establishing that the "out-of-state actor has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting in part *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)).  The contacts between the defendant and the forum "must not be merely random, fortuitous, or attenuated; rather, the 'defendant's conduct and connection with the forum State' must be such that it should 'reasonably anticipate being haled into court there.'" *Id.* (quoting in part *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  In the instant action, Van Leer contends that it is not subject to personal jurisdiction in Illinois.

A.  Distinction Between General and Specific Jurisdiction Analysis

We first note that Acme has presented ambiguous arguments concerning the basis for its contention that Van Leer is subject to personal jurisdiction in Illinois. Although Acme recites law concerning general and specific personal jurisdiction, Acme fails to clarify in its arguments whether it is contending that Van Leer is subject to general jurisdiction, specific jurisdiction, or both.  Instead, Acme presents

arguments meshed together from different aspects of the law, presenting an analysis not recognized by the law. For example, Acme argues that Van Leer has "systematic and continuous contacts with Illinois, [t]hus purposefully availing itself of the benefits in Illinois." (Ans. VL Dis. 7). Such an argument is inconsistent with the very precedent cited by Acme. As indicated above, "continuous and systematic" contacts are a prerequisite for general jurisdiction. *Citadel Group Ltd.*, 536 F.3d at 760 n. 3. On the other hand, a defendant's "purpose availment" of privilege of conducting its activities in the forum state relates to the minimum contacts analysis and specific jurisdiction. *Burger King Corp.*, 471 U.S. 462, 475 (1985). Thus, Acme's statement above that Van Leer has purposefully availed itself of privileges in Illinois because Van Leer has continuous and systematic contacts, essentially argues that, since Van Leer is subject to general jurisdiction in Illinois, Van Leer is subject to personal jurisdiction in Illinois. Such an argument is misplaced and such an analysis is unsupported by the law. In fact, if Van Leer was subject to general jurisdiction in Illinois, it would be subject for all purposes and there would be no need to conduct a specific jurisdiction analysis. *Id.*

Acme also presents arguments concerning general jurisdiction "continuous and systematic" contacts along with a stream of commerce theory for personal jurisdiction. (Ans. VL Dis. 11). However, the Seventh Circuit has specifically

rejected such arguments stating, for example, in *Purdue Research Foundation* that the plaintiff's "reliance on the stream of commerce theory [wa]s misplaced because that theory is relevant only to the exercise of specific jurisdiction" and "it provides no basis for exercising general jurisdiction over a nonresident defendant." 338 F.3d at 788.

Defendants are likewise unclear as to the basis for Acme's position, concluding that based on Acme's "systematic and continuous" language that Acme is arguing that Van Leer is subject to general jurisdiction. (Reply. 2). However, Acme in its broad brush of transposed arguments makes various references to Van Leer's indirect contacts with Illinois, thus employing the specific jurisdiction law as a basis for personal jurisdiction in this case. Acme also presents certain stream of commerce arguments and such arguments are based upon the *International Shoe* minimum contacts analysis, and relate to specific jurisdiction rather than on general jurisdiction. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

The distinction in our analysis between general jurisdiction and specific jurisdiction is not a trivial point. Although Acme combines its arguments concerning general and specific jurisdiction as though they are similar concepts, the Seventh Circuit has specifically indicated that "the constitutional requirement for general jurisdiction is 'considerably more stringent' than that required for specific

jurisdiction." *Purdue Research Foundation*, 338 F.3d at 787 (quoting in part *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001)). The Seventh Circuit has held that, for general jurisdiction, a plaintiff must show that the defendant's contacts with the forum state are so extensive that they are "tantamount to [the defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the state court] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue Research Foundation*, 338 F.3d at 787 (emphasis in original). Thus, it is important to delineate between general and specific jurisdiction in a personal jurisdiction analysis. Therefore, we will address general jurisdiction and specific jurisdiction in turn separately below.

B. General Jurisdiction

As indicated above, in order for Van Leer to be subject to general jurisdiction in Illinois, Van Leer must have contacts with Illinois that are "continuous and systematic." *Citadel Group Ltd.*, 536 F.3d at 760. The only contacts pointed to by Acme that Van Leer has with Illinois are indirect contacts resulting from barrels made by Van Leer that are allegedly ultimately shipped to Illinois. Such indirect contacts with Illinois fall far short of the bar to show that Van Leer is present in

Illinois to the degree necessary to be subject to general jurisdiction.  The sequence of events resulting in the presence of some barrels in Illinois that were manufactured by Van Leer are insufficient to show that Van Leer was continuously and systematically present in Illinois and that Van Leer should be deemed constructively present in Illinois.  Thus, Acme has not shown that Van Leer is subject to general jurisdiction in Illinois.

### C.  Specific Jurisdiction

Acme argues that Van Leer's indirect contacts with Illinois should subject Van Leer to specific personal jurisdiction in Illinois.

### 1.  Akzo's Activities

Acme argues in response to Van Leer's motion that the distribution agreement between Acme and Akzo involved approximately 80,000 pounds of products that were transferred from Akzo's warehouse in Bedford Park, Illinois to Acme's warehouse in Kankakee, Illinois.  (Ans. VL Dis 8).  Such an argument represents the fundamental flaw in Acme's position in this case.  The 80,000 pounds of products referred to are the capric acid manufactured by Akzo, not the barrels made by Van Leer.  Acme continuously focuses on Akzo's activities, and then attempts to

bootstrap Van Leer to all such activities. However, Acme does so without any evidence to support such connections. For example, Acme refers to Van Leer's involvement in a "partnership with Akzo Bobel" intended to facilitate the "continuous and systematic distribution network" used by Van Leer to ship barrels to Illinois. (Ans. VL Dis. 9). However, Acme presents such conclusory statements without evidentiary support and without contesting the documentation presented by Van Leer.

The record before us suggests that Van Leer sold barrels to Akzo. Acme has failed to substantiate any inference that Van Leer had some sort of exclusive relationship with Akzo, geared to funnel barrels into Illinois. Acme also presents various unsupported statements about Van Leer's "established distribution channel" to Illinois and Van Leer's strategy to "generat[e] as much U.S. market penetration as possible." (Ans VL Dis. 9). Acme also refers, without citations in support, to Van Leer's participation in a "network of global manufacturers of industrial and consumer packaging materials. . . ." (Ans VL Dis. 10).

Acme also theorizes that the fact that Akzo sold its product to Illinois customers "mean[s] even greater numbers of [Van Leer] barrels continuously and systematically were warehoused in Illinois and/or sold to Illinois consumers." (Ans. VL Dis. 10). Acme fails, however, to show such connections between Akzo's

activities in Illinois and Van Leer's activities outside of Illinois. In fact, the only support cited by Acme for the above statement is the affidavit of G C Tan ("Tan Affidavit"). (Ans. VL Disc. 10). The Tan Affidavit, however, contains only statements concerning Akzo's activities. Absent from the Tan Affidavit are any indications concerning Van Leer's activities, thus illustrating that Acme's personal jurisdiction theories in this case as to Van Leer are based on nothing more than supposition. Similarly, to show that Akzo has an "established distribution channel" to Illinois, Acme cites only to Akzo's website and references the location of Akzo's headquarters and activities. (Ans. VL Dis. 9).

Acme also subsequently argues in its brief that "[g]iven the relationship between [Van Leer] and Akzo Nobel Industries, [Van Leer] cannot deny that its barrels were continuously and systematically distributed to Illinois consumers and/or stored in an Illinois warehouse." (Ans. VL 10-11). As part of Acme's argument, Acme states "[g]iven the relationship between [Van Leer] and Akzo Nobel Industries. . . ." This statement illustrates the problem with Acme's arguments. The relationship is not a "given" and its portrayal is based only on Acme's own supposition. Nothing illustrates this point better than Acme's assertion that Van Leer either has actual or constructive knowledge of Akzo's business activities and the fact that Akzo's products are allegedly being funneled to Illinois. To support this

proposition, Acme states that it has conducted a search on Google, which Acme contends shows that Van Leer's facility in Malaysia is less than ten miles from Akzo's facility in Malaysia. (Ans. VL Dis. 10). It is pure speculation that such proximity between the facilities has any impact on Van Leer's actual or constructive knowledge as to Akzo's business activities.

### 2. Barrel in Question

As Van Leer points out, although Acme makes much of Akzo's warehouse of products in Illinois, Acme does not contest Van Leer's assertion that the actual barrel in question that allegedly caught fire was at no point ever in Illinois. It is uncontested that the barrel was made by Van Leer in Malaysia and shipped to Akzo's facility in Malaysia. Akzo then used the barrel in its operations and ultimately shipped it to Acme in Pennsylvania. Acme then sold the product to Tom's and shipped it to Maine. Thus, the barrel in question was not even present at any juncture in Illinois. Van Leer has shown that it conducts its operations in Malaysia and ships its product to Akzo in locations outside the United States. Although Akzo ultimately ships products to the United States, there has been no showing by Acme that Van Leer should anticipate that its barrels are being used down the line in Illinois.

### 3.  Huston Deposition

Acme's own Vice President of Sales and Marketing, Bryan Huston ("Huston") who was deposed in this case, indicates that Acme has no knowledge about Akzo's packaging of its materials much less Akzo's business dealings with entities that manufacture such packaging.  (Huston Dep. 58).  In addition, although Acme asserts knowledge about Akzo's activities and speculates about possible exclusive relationships between Akzo and Van Leer to further Van Leer's alleged distribution channel to Illinois, Huston acknowledges that Acme does not have an exclusive relationship with Akzo and is thus merely one of Akzo's customers.  (Huston Dep. 37).  Huston also makes no mention of any knowledge concerning Van Leer and acknowledges that Acme makes its purchases from Akzo in Malaysia and Germany. (Huston Dep. 32).

### 4. Lee Declaration

Van Leer has attached to its motion to dismiss a declaration from Chong Chin Lee ("Lee"), a Director of Van Leer in Malaysia.  Lee asserts that Van Leer conducts its business in Malaysia.  Lee states that Van Leer has never been licensed to conduct business in Illinois, has never maintained a registered agent in Illinois, has never

maintained bank accounts in Illinois, does not maintain an office in Illinois, has never maintained employees in Illinois, has never owned property in Illinois, and has never advertised in Illinois. (Lee Decl. Par. 5-11). Lee also states that Van Leer has never delivered any of its products to customers in Illinois and has never had any contracts with companies in Illinois. (Lee Delc. 14-15). Acme has not disputed any of the above points. Instead, despite being given the opportunity to conduct discovery, Acme relies on abstract and unsupported arguments concerning Van Leer's knowledge about its products entering Illinois and Acme fails to present facts to support its case.

### 5. Stream of Commerce

Acme also argues that Van Leer should be held accountable in Illinois since Van Leer placed its barrels in the stream of commerce. A defendant that places its product in a "stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state . . . may be subject to specific jurisdiction in the forum state." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004)(citing *World-Wide Volkswagen*, 444 U.S. at 297-98). However, in this case, Acme has failed to point to facts that show that Van Leer should have had a reasonable expectation that its barrels were

being funneled into Illinois.  The evidence in this case shows that Van Leer sold its barrels to Akzo in Malaysia.  It was subsequent steps taken by Akzo in shipping it to the United States, and Acme's shipment of the barrels in the United States, that resulted in the arrival of the barrel in question in Maine.  As with the defendant in *World-Wide Volkswagen*, Van Leer does not conduct business in Illinois, solicit business in Illinois, or maintain any presence in Illinois.  444 U.S. at 295-96.  Some of Van Leer's barrels that may have ended up in Illinois came to Illinois due to the intermediate actions of third parties, and not necessarily due to an effort by Van Leer to indirectly serve a market in Illinois.  *Id.* at 297.  It is also important that the alleged barrel that allegedly caused the damages in this case that was placed in the stream of commerce never ended up in Illinois.  Thus, Acme has not shown that Van Leer should be subjected to personal jurisdiction due to placing its product in the stream of commerce.

### 6.  *Honeywell* and *Gray*

Acme relies upon cases such as *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975) and *Gray v. American Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961), to support its position.  (Ans. VL Dis. 6-9).  However, both cases are distinguishable from the instant action.  In *Honeywell*, the

Seventh Circuit concluded that a German manufacturer should be subject to personal jurisdiction in Illinois. 509 F.2d at1145. However, in *Honeywell*, the Court specifically noted that the German manufacturer had an "exclusive agreement for distribution in the United States. . . ." *Id.* at 1144. In the instant action, Acme has made no showing that Van Leer had any exclusive arrangement with Akzo or with Acme. *Honeywell* is also distinguishable from the instant action since in *Honeywell*, the Court noted that the German manufacturer "purposely promoted American sales and ensured that such infringement would take place, causing injury to [the plaintiff], a corporation with its principal place of business in Illinois." *Id.* In the instant action, however, there is no evidence showing that the barrel in question caused damages in Illinois. Finally, we note that since *Honeywell*, which was decided in 1975, the United States Supreme Court has made several key decisions relating to personal jurisdiction. *See, e.g., Burger King Corp.*, 471 U.S. 475; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408; *World-Wide Volkswagen Corp.*, 444 U.S. 286.

Acme also relies upon *Gray v. American Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961), for its position. *Gray* is likewise distinguishable from the instant action. Unlike in the instant action, an accident in *Gray* occurred in Illinois. *Id.* at 762. The Court in *Gray* found it significant that "[t]he facts show[ed]

that the plaintiff, an Illinois resident, was injured in Illinois." *Id.* at 766.  Finally, as

with *Honeywell*, we note that since *Gray*, which was decided in 1961, the United

States Supreme Court has made several key decisions relating to personal

jurisdiction.  *See, e.g., Burger King Corp.*, 471 U.S. 475; *Helicopteros Nacionales de

Colombia, S.A.*, 466 U.S. 408; *World-Wide Volkswagen Corp.*, 444 U.S. 286.  As

indicated above, both *Honeywell* and *Gray* are distinguishable from the instant

action.


      7.  Court in Maine Action

     Finally, we note that the court in the Maine Action previously dismissed Van

Leer as a defendant in the Maine Action.  The court noted how less likely it was that

Van Leer would be subject to personal jurisdiction in Maine when Akzo was not

subject to personal jurisdiction in Maine, since Van Leer "is one step further

removed from Maine and the fire that serves as the basis for th[e] litigation."

(7/16/08 OR 7).  Likewise, in the instant action, in which Acme has voluntarily

dismissed all claims against Akzo, it is questionable that Van Leer can be subjected

to personal jurisdiction considering it is one step further down the chain of events

than Akzo.  We also note that the court in the Maine Action specifically refused

Acme's request to transfer the Maine Action to Illinois or Pennsylvania.  (7/16/08

OR 17).  The court in the Maine Action, in refusing to transfer the case, was not

willing to find that Akzo or Van Leer were subject to personal jurisdiction in Illinois

or Pennsylvania.  The court stated that "it [wa]s not clear that either of th[o]se forums

would have a basis for exercising jurisdiction over Tom's products liability claims

that serve as a basis for Acme's third party complaint."  (7/16/08 OR 17).  Based on

the above, we conclude that Acme failed to point to sufficient facts and evidence to

show that Van Leer should in fairness and equity be subjected to personal

jurisdiction in Illinois.  In coming to this conclusion, we reiterate that we are aware

that Acme need only make a *prima facie* showing at this juncture, but Acme has

failed to meet even that burden.  Therefore, even if Acme could show that this court

has subject matter jurisdiction, we would grant Van Leer's motion to dismiss.  In

light of the dismissal, the arguments concerning service on Van Leer are moot.


## II.  Greif's Motion to Dismiss

Greif moves to dismiss all claims brought against it.  Greif argues that it

cannot be held liable simply because it owns Van Leer.  Parent corporations are

generally "not liable for the wrongs of their subsidiaries unless they cause the

wrongful conduct (and so are directly liable) or the conditions of investors' liability .

. . have been satisfied."  *Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th

Cir. 2007).  Acme contends that in certain instances, parent companies can be held liable for the conduct of subsidiaries.  (Ans. GR Dis. 6).  However, Acme has failed in the instant action to point to facts that would make such theories plausible.

Acme also points to the portion of its complaint where it alleges that Greif itself was involved in the manufacture and design of the barrels sold by Van Leer. However, the paragraph referred to by Acme is nothing more than the same conclusory statement used to refer to the activities of Van Leer in the complaint. (Compl. Par. 44-46).  Acme itself acknowledges that Van Leer and Greif are separate entities and yet Acme fails to provide any explanation for how Van Leer and Greif both designed and manufactured the barrel in question.  Acme must offer more than conclusory statements to bring a claim against Greif.  It is also apparent from Acme's own statements in its complaint and briefs that it is Van Leer, not Greif, that Acme believes manufactured the barrel in question.  Acme contends that Van Leer "manufactured the subject barrel."  (Ans. VL Dis. 2).  Acme also states, for example, that "[a] critical question in this litigation would be why [Van Leer] designed and manufactured the barrel with holes and whether his design was defective."  (Ans. VL Dis. 15).  Acme makes no mention of Greif's alleged role in the design.  Acme describes Greif as "own[ing] [Van Leer], the manufacturer of an allegedly defective barrel. . . ."  (Ans. VL Dis. 2).  However, as indicated above, Acme must show more

than simply that Greif owns Van Leer.  Acme has not done so in this case.

Therefore, even if Acme could show that this court has subject matter jurisdiction,

we grant Greif's motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we grant both Van Leer's and Greif's

motions to dismiss.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   March 4, 2009